IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TEXTRON FINANCIAL
CORPORATION,

                Plaintiff,

vs.                                  Civil Action 2:07-CV-557
                                           Judge Sargus
                                           Magistrate Judge Kemp

INDIAN LAKE POWER
SPORTS, INC., *et al.*,

                Defendants.

## OPINION AND ORDER

This matter came before the Court on Plaintiff's Motion for Summary Judgment (Doc. 44) and Motion for Voluntary Dismissal of Defendant Jeff Fout (Doc. 61). Plaintiff's Motion to Dismiss Jeff Fout, an individual defendant, based on the parties' settlement is unopposed and is hereby GRANTED.

Plaintiff's Motion for Summary Judgment against defendant Indian Lake Power Sports, Inc. ("Indian Lake") and individual defendant Michael Kysenceder is GRANTED for the reasons that follow.

## I.

On February 17, 2003, Indian Lake and Textron entered into a financing agreement whereby Textron agreed to finance Indian Lake's acquisition of inventory, ATV's and snowmobiles, for sale in the ordinary course of Indian Lake's business. Am. Compl., ¶8; Wholesale Security Agreement, Doc. 44-3 ("Security Agreement"). In order to secure its loan, Indian Lake granted to Textron a security interest in all inventory then owned or later acquired by Indian Lake (the "Collateral"). Textron perfected its security interest in the Collateral by filing a UCC-1 financing statement with the Ohio Secretary of State on March 18, 2003. Am. Compl., ¶11, Exhibit C. Indian Lake agreed to repay Textron from the proceeds of sales of the Collateral. Agreement, ¶¶2, 7; *see also* Affidavit of Timothy J. Mortimer, Mot. SJ at Ex. C, ¶6. Specifically, Indian Lake was to pay to Textron "the original invoice cost ... of each item of

Collateral financed or refinanced for [Indian Lake] by [Textron]" under the Agreement. Agreement, ¶2. Indian Lake also agreed to pay interest and other charges related to the loan. *Id.*, ¶10. As set forth in the Agreement, Indian Lake agreed that, in the event of default, Textron had the right to repossess the Collateral, dispose of the Collateral in a commercially reasonable manner, and collect from Indian Lake "any deficiency remaining after the disposition of the Collateral." *Id.* Indian Lake further agreed that, in the event of default, Textron was entitled to recover from Indian Lake all expenses related to Textron's efforts to enforce its rights under the Agreement, including all expenses related to the collection of any debt owed by Indian Lake, costs related to the repossession and sale of the Collateral, attorneys' fees, and other legal expenses. *Id.*; Mortimer Aff., ¶7.

On February 19, 2003, Defendant Kysenceder executed a personal guaranty in favor of Textron, guaranteeing the performance of any obligations, duties, and liabilities owed by Indian Lake to Textron under the Security Agreement. Am. Compl., ¶9; Mot. for SJ at Ex. D, Guaranty, ¶1.

Defendant Indian Lake made payments for four years before defaulting on the Security Agreement in April, 2007. Following the default, on June 12, 2007, this Court entered an order (Doc. 8) restraining Indian Lake from selling, transferring, or assigning any of the Collateral. On June 17, 2007, Indian Lake executed a Voluntary Release and Surrender whereby Indian Lake agreed to release and surrender the Collateral. On June 20, 2007, this Court entered a Consensual Order of Possession (Doc. 14), whereby Indian Lake agreed to allow Textron to recover immediate possession of its Collateral. Subsequently, Textron recovered possession of much of the Collateral. Indian Lake failed to surrender nine ATVs and five snowmobiles. Accordingly, as of March 21, 2008, Textron claims that Indian Lake still owes $119,591.75 under the Agreement.

Defendants Indian Lake and Kysenceder do not dispute the underlying material facts. Rather, they raise three defenses based on 1) the alleged theft of the missing collateral; 2)

Textron's failure to sign the Security Agreement and 3) alleged inconsistencies in Textron's damage calculations. As set out below, Defendants' have not put forward evidence sufficient to withstand summary judgment.

## II.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. While all inferences must be drawn in favor of the nonmoving party, the Court is under no obligation to imagine favorable facts where the nonmoving party has alleged none. *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 2008 U.S. App. LEXIS 14078 (6th Cir. Ohio 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In opposing summary judgment, Defendants have an affirmative duty to "set out specific facts showing a genuine issue for trial." *Celotex*, 477 U.S. at 324. Conclusory statements, arguments, assertions, and pleadings are not facts, and do not constitute "evidence" under Rule 56. *See* 11 Moore's Fed. Practice § 56.1[7][c] (3d ed. 2007). Further, Rule 56 requires that affidavits and other evidentiary materials set forth facts that would be admissible at trial. Fed. R. Civ. P. 56(e)(1).

## III.

There is no dispute that Defendants are obligated by the terms of the Security Agreement and the personal guarantee of Kysenceder to pay Textron for the Collateral. Although now

claiming that the Security Agreement's validity is uncertain because it is unsigned by Textron, Defendants do not dispute that Indian Lake conducted business under the Agreement for four years. Defendants cite no law in support of their half-hearted contention that the unsigned Security Agreement prevents summary judgment. Plaintiff, on the other hand, relies on Rhode Island law establishing that a valid contract exists where the parties have manifested their intent to be bound, and that a contract needs to be signed only by the party with obligations arising under the contract.[1] *See Smith v. Boyd*, 553 A.2d 131, 133 (R.I. 1989). Defendant Kysenceder's own affidavit contains an admission that the Security Agreement bound Indian Lake to pay Textron. Defs' Mem. in Opp. to SJ, Doc. 51-1.

The Court finds that the Security Agreement and Kysenceder Guaranty are binding contracts, under which Defendants are in default.

The Court further holds that the existence of Defendants' potential claims against third parties for theft of the missing Collateral does not prevent summary judgment in favor of Textron on the Agreement. Defendants incorrectly contend that "there exist genuine issues of material fact as to who owes Textron, and in what amount." The undisputed facts establish that only Indian Lake and Kysenceder are contractually obligated to pay Textron. Textron has no contractual relationship with any of the third parties against whom Defendants have filed claims, and it cannot recover from those third parties for breach of contract, regardless of their criminal culpability.

Defendants do not dispute that they are in breach of the Security Agreement; the cause of their default is irrelevant in this case and does not create a genuine issue regarding the material fact of default. Moreover, summary judgment against Defendants will not preclude or even hinder them in pursuing claims against third parties whom Defendants claim stole the Collateral.

---

[1] Section 13 of the Security Agreement states: "This Agreement shall be governed by, and construed in accordance with, the laws of the State of Rhode Island, without reference to applicable conflict of law principles." Defendants do not dispute the application of Rhode Island law to interpretation of the contract.

4

Finally, the Court finds that Textron has properly supported its calculation of damages through the affidavits and evidence submitted in support of its motion for summary judgment. Defendants have not provided any evidence creating a genuine issue of material fact as to the amount of Plaintiff's damages, and there is no issue remaining for trial.

In summary, Textron has established each element of its claim for breach of contract against Indian Lake. *See Feinstein v. Brown*, 432 F. Supp. 2d 258, 269 (D.R.I. 2006) ("breach of contract claim requires the existence of a contract, a breach, and damages"); *Am. Sales, Inc. v. Boffo*, 71 Ohio App. 3d 168, 593 N.E.2d 316, 321 (1991) (breach of contract claim requires proof of the contract's terms, performance, breach, consideration, and damages resulting from the breach).

As a result of Indian Lake's undisputed default on the Security Agreement, Kysenceder became liable on his individual Guaranty obligations. It is undisputed that Kysenceder's Guaranty is a valid and binding contract that has not been performed since Indian Lake's default. Plaintiff has therefore established the elements of its breach of contract claim against Kysenceder, and there are no issues remaining for trial.

### IV.

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. 44) and Motion for Voluntary Dismissal of Defendant Jeff Fout (Doc. 61) are **GRANTED**. The Clerk is directed to enter final judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

10-8-2008
Date

Edmund A. Sargus, Jr.
United States District Judge

5